## POWER COMPANY SERVING A GROUP OF FACTORIES NOT A PUBLIC UTILITY.

Common Pleas Court of Franklin County.

STATE OF OHIO v. THE FACTORY POWER COMPANY.

Decided, January 20, 1915.

*Taxation—Community Arrangement for Furnishing Factory Power, Heat and Water—Stockholders and Customers Identical—Not a Public Utility and Not Subject to the Excise Tax, When—Sections 5415, et seq.*

A corporation organized for the sole purpose of furnishing electric current, heat and water to a group of manufacturing establishments, which does not exercise the power of eminent domain, or make use of streets or public ways, or serve the general public in any way, the stock whereof is owned by the factories served in proportion to the amount of service rendered to each, is not a public utility, but a private corporation, and as such is subject to a franchise tax but not to the excise tax.

*Timothy S. Hogan*, Attorney-General, for plaintiff.
*Moulinier, Bettman & Hunt* and *Gatch & McLaughlin*, contra.

KINKEAD, J.

This action is brought to recover the sum of $806.46 for taxes and penalty alleged to be due the state. It is averred that the defendant is a corporation, engaged in the business of supplying electricity for light and power purposes, to consumers within Hamilton county and the state, and was so engaged at all times during the year preceding the first day of May, 1912. It is claimed that the defendant is an electric light company within the meaning of Sections 5416 and 5483 of the General Code, and a public utility within the meaning of Sections 5415 and 5470 of the General Code.

The answer of the defendant sets forth facts showing the purpose of its organization, the nature and character of its business.

Its business is carried on in the village of Oakley, Ohio, where a group of manufacturing establishments have located their factories. This group consists of the Cincinnati Milling Machine Company, the Triumph Electric Company, the Cincinnati Bickford Company, the Alvey Ferguson Company, the Cincinnati Planer Company, the Modern Foundry Company and the Cincinnati Lathe & Tool Company.

Each and all of these companies, it is alleged, have been engaged in purely private businesses, manufacturing and selling machine tools, general machinery, motors, conveying machinery, automobile parts and foundry work. For the purpose of economy in the production of power necessary to the operation of the plants and factories of these manufacturing companies, they determined upon a joint power plant located upon the single tract of land on which all of their manufacturing establishments were and are located. It was also determined that the share of each company in the ownership of the joint power plant should correspond to the proportion of use made by the several companies respectively of the power generated by the power plant. For the purpose of facilitating the variations in proportion of ownership to correspond to the variations in proportion of use, it was determined to organize a separate corporation, to be known as the Factory Power Company as the legal owner and operator of the power plant, and the said Factory Power Company is this defendant.

The defendant generates the electric power but does not distribute the same, and each of said constituent companies brings its own wires and conduits to the generating plant of the defendant and at the plant receives the power which it uses. The defendant alleges that it does not now use, and at no time has used and does not intend at any time to use any street, road or other public way for the construction, maintenance or operation of wires, conduits or other transmission facilities. It has at no time and does not intend to exercise any power of eminent domain. It has at no time sold or delivered, or been willing to sell or deliver, or hold itself out as willing to sell or deliver any electric current, power or other service to any person, firm or corpo-

ration other than one of its own stockholders, and its own stockholders have at all times been exclusively manufacturing companies with plants located upon the single tract of land; and it is the defendant company's intention to restrict stockholding to such companies.

At the beginning of each fiscal year, the company fixes a scale of rates to be charged for current or other services, which scale is an estimate as accurately as is practicable to make on the actual cost to the company of such current and service. Included in the cost is always an item of 7 per cent. upon the par value, namely of each $100 of stock in the company. If, at the end of the year, the company's actual receipts during the year exceed the actual cost to it of rendering said service to the said constituent companies, then such excess is paid back to the constituent companies in the exact proportion in which they originally contributed to the receipts. If, at the end of the year, however, the actual cost of the service is found to have exceeded the charges made for the same, then such deficit is charged to and paid by said constituent companies in the proportion of the amounts respectively of service rendered them. If, at the end of the year, it develops that the amounts of service of defendant company to the different constitutent companies has not corresponded approximately to the proportion of stock of defendant company owned by constituent companies, then an adjustment of the holdings of the stock of defendant company is made between the constituent companies by the transfer of stock, at par, from one of the constituent companies to the other or others of the constituent companies corresponding approximately to the proportion in which they have during the year used the defendant company's service.

In addition to electricity for both light and power purposes, the defendant company generates steam for heating purposes, and also pumps water from a well located on said tract. All of the above facts relating to the manner of distribution and manner of operation, the fixing of rates and the actual distribution of cost amongst the constituent companies, relates to the furnishing of heat and water as completely and as accurately as to the

furnishing of electric current. The sum of $58,439.51 represents gross receipts from electric current, heat and water.

The defendant company claims that by reason of the facts alleged by it that it is not an electric light company within the meaning of Section 5416 of the General Code of Ohio, and that it is not subject to the provisions and requirements of Sections 5470, 5474, 5475, 5476, 5481 and 5483 of the General Code of Ohio, and that if said sections apply to this defendant, then said sections are unconstitutional and void, being in violation of Section 1, Article XIV of the Constitution of the United States, in that they deny to this defendant the equal protection of the laws of the state of Ohio, and also in violation of Section 2 of the Bill of Rights of the state of Ohio, in that this defendant is deprived of equal protection and benefit of the government of Ohio, and also in violation of Section 19 of the Bill of Rights of the state of Ohio, in that they constitute a taking of private property of defendant without due compensation, and also in violation of Section 4 of Article XIII of the Constitution of Ohio.

This defendant further says that during each and every year of its existence, including the year preceding May 1st, 1912, the defendant duly made a report to the tax commission of Ohio and its predecessors, as required by the so-called Willis law, being now Sections 5495, 5496 and 5497 of the General Code of Ohio, and both in October, 1911, as well as in all previous and subsequent years, duly tendered to the Treasurer of the State of Ohio, in accordance with Section 5498 of the General Code, the fee required by said sections, and has at all times been ready and willing to pay said fee.

The question is whether a corporation organized by several other corporations for the sole and express purpose of furnishing power—electricity, and also heat and water to each other—the stock in which is exclusively owned by such corporations and is yearly adjusted in proportion to the amount of power used and paid for by each of such corporations; such corporations not using streets, nor exercising the right of eminent domain, nor furnishing the general public with electricity, is a

public utility within the meaning of Sections 5415 and 5416, and, as such, subject to the provisions of Sections 5470 *et seq.* for excise taxation.

The question propounded in the Brief of the Attorney-General is whether the company is a domestic corporation for profit, liable for annual reports and payment of fees based upon its issued and outstanding capital stock on the one hand, or an electric company, and a public utility, liable as such to make annual statements of its gross receipts and to pay an excise tax of 1 2/10 % thereof.

The company is being sued as an electric light company and defends on the ground that its business is not such as to constitute it an electric light company, and that it should be taxed as a domestic corporation for profit.

It is contended that the defendant is organized and conducted so far as the external features of its business are concerned just the same as any other electric power corporation, except that instead of completely distributing power, which it generates itself, those who appear from the outside as its customers own and maintain their own distribution wires. Looking to the internal concerns of the company, it is contended, that it appears that its stockholders and its customers constitute the same body of artificial persons; that is to say, the company generates current at the present time for the use of its stockholders only.

The stock holdings are annually adjusted to the extent of the consumption of the electric current on the part of each stockholder respectively. The aim is not to produce profits; but 7% dividends seem to be figured as part of the operating expenses which are distributed to the stockholders. On the other hand, if the schedule of rates which is annually revised to meet anticipated operating cost, proves insufficient for that purpose, the loss on the year's operation is charged to and paid by the constituent companies in proportion to the amount of current consumed by them.

The Attorney-General although conceding that the status of the company is not exactly normal, nevertheless contends that it possesses every attribute required by the statutory definition of

a public utility and electric light company and should be taxed as such. It is argued that the company is engaged in the business of "supplying electricity;" that there can be no question that the production of electric current and its preparation for transmission so as to be used for light and power purposes, does constitute "supplying electricity" within contemplation of the statute.

It may apparently seem that the defendant corporation is within the letter of Section 5416 because it is engaged in the business of supplying electricity for light. But these statutes must all be considered together, in the light of their purposes, with a view to the objects and purposes of the kinds of corporations to which they relate.

Whether defendant is such a corporation as comes within the meaning of the several statutes providing a system of franchise and excise taxation must depend primarily upon the construction of such statutes. It must depend secondarily upon its purposes, and the nature and character of the business which it carries on. It must depend upon what is contemplated by a *public utility;* upon what is meant by a corporation "engaged in the business of supplying electricity for light,   *   *   *   heat or power purposes, to consumers within this state," as contemplated by the enactment.

The objects and purposes of the several statutes providing systems of franchise and excise taxation are to be considered, together with their history.

The history of the legislation relating to franchise taxation of private corporations, and the excise taxation of public service corporations, or *quasi* public corporations, or public utility corporations, is perfectly well known.

It began in 1896 by the enactment of a law (92 O. L., 79) which laid an excise tax upon those engaged in certain enumerated kinds of business of a *quasi* public nature. It had its origin in the public sentiment and demand that those enterprises, in addition to the payment of the property tax, should contribute directly to the revenues of the state. The excise tax laid by that law was upon the operation of the plant or property of the con-

cerns engaged, measured by gross earnings arising from such operation. The original act of 1896 was amended and largely extended by the passage, in 1902, of an act commonly known as the "Cole law" (95 O. L., 136).

At the same time that legislation in response to the public demand for further state revenues from corporations generally was supplemented by the enactment of the "Willis law" (95 O. L., 124), an entirely new enactment providing for a franchise tax upon domestic and foreign corporations other than public utilities. This laid a franchise tax of one-tenth of one per cent. upon the capital stock of all domestic and foreign corporations for profit, except those covered by the "Cole law."

There were numerous amendments to both of these acts in the intervening years, until they finally found their places in the "Langdon act," creating the tax commission of Ohio, passed May 10, 1910 (101 O. L., 399). This was subsequently amended in some respects by the "Nichols law," passed May 31, 1911 (102 O. L., 224).

In codifying the code, the various sections were shifted about somewhat, especially Sections 39 and 40 of the "Langdon act" being placed at the beginning of the chapters entitled: Chapter 5. "Public Utilities. Railroads and Suburban and Interurban Electric Roads"; Chapter 7. "Public Utilities—Cont'd, Express, Telegraph, Telephone, Sleeping Car, Freight Line and Equipment Companies"; Chapter 8. Public Utilities—Cont'd. Excise on Corporations; and "Chapter 9. Public Utilities—Cont'd. Franchise Tax on Corporations."

2780-17 and 2780-18 of the "Cole law" (95 O. L., 136) is to be found in modified form in Section 5416, §40. Its other provisions are to be found in other parts of the chapters.

Section 1 of the Willis law (95 O. L., 124) is to be found at Sections 5495, 5497, 5498.

The exemption clause of electric light, gas "and other *public utilities*" from the operation of the franchise tax of the Willis law was carried in the act creating the tax commission (101 O. L., 399), being Section 101 of that act or 5242-3, Bates R. S. That the purpose was to exempt purely private corporations as

distinguished from public utilities or *quasi* public corporations is clearly evinced in that act by the insertion of the words therein, "and other public utilities."

The original exemption clause of the Willis law as to electric light and other public utility corporations—being Section 101 of the tax commission act, or Section 5242-3 Bates, wherein the amendatory act of May 31, 1911 (102 O. L., 224), was not carried into the General Code in the precise language.

In its place, however, there is to be found a provision of similar import. Sections 5518, being Section 129 of the act in 102 O. L., 224, provides that:

"An incorporated company foreign or domestic, owning or operating a public utility foreign or domestic, and as such required by law to file reports with the tax commission and to pay an excise upon its gross receipts or gross earnings, * * * shall not be subject to the provision of section one hundred and six to section one hundred and fifteen. (G. C., §5495 to §5504.)

Sections 5495 to 5504 constitute the provisions of the Willis law having to do with the franchise tax.

Thus it will be seen that the plan of the present provisions of the General Code relating to assessment of franchise and excise taxes is the same as it has always been.

Purely private corporations only are required to pay the franchise tax.

*Quasi* public corporations, or public utilities, are to pay excise taxes, but not the franchise tax.

There is a potent reason for this distinction and rule. One kind of corporation does not undertake to serve the general public, while the other conducts a business of such nature and character that the whole people, or general public, is interested in, and must some time or other, or all the time, use.

An electric light company which holds itself out to serve the general public, owes certain public duties, derives greater advantages, and, therefore, greater exactions may be exacted from it. It is a public utility, or public service corporation.

What is to be deemed a public utility must depend upon the nature and character of the business carried on.

The distinction which has always existed in the taxation laws, and which have been thoroughly understood, is unequivocally expressed in the code by the constant use of the word public utility, which was first used in the Langdon act (101 O. L., 399). So that one who runs may read the several statutes on the subject will readily understand what is meant. Particularly is Section 5 (5542-3), 101 O. L., 399, significant:

"Electric light, gas, natural gas, waterworks, pipeline, street railroad, surburban or interurban railroad, steam railroad, messenger, union depot, express, freight line, sleeping car, telegraph, telephone, *and other public utilities* required by law to file annual reports with the commission," etc.

And *other public utilities* is thus inserted in this section exempting electric lights and other companies carrying out the legislative intent and purpose to construe all of the specially named corporations, including electric light companies—as public utilities, to be distinguished from other domestic corporations for profit which are not organized to, and do not hold themselves out to serve the public at large.

This legislative interpretation and construction is in exact accord with the general understanding of bench and bar.

So when we come to a consideration of General Code, Sections 5415, 5416 *et seq.*, there is nothing new contained therein; there is nothing but a shifting of its location. The provision in Section 5416 relating to electric light companies is no different from previous provisions found in the tax commission act. Section 5415 is precisely §39 of the tax commission act, nothing new being contained in it whatever.

But Section 5518 above referred to, containing the exception of the "public utility" corporations, is new and was designed to carry out the distinction theretofore made, and was intended to exempt an electric light company as a public utility from the operation of the franchise tax.

This somewhat labored and detailed review of the statutes has been made to show how the statutes have always, and do still, distinguish between public service corporations and private corporations.

It is perfectly clear from the answer that the defendant is not a public service corporation, that it is not a public utility company, because it undertakes only to render private service to the several private corporations which own its stock. It does not undertake to serve the public in general, nor is it under any obligation to do so.

It is a private corporation, and as such is subject only to the franchise tax.

The demurrer to the answer is overruled. Judgment is entered upon the pleadings in favor of the defendant.